All right, our last case for this morning, still morning, is United States v. Shelton. We're again for Ms. Christensen. Welcome back. Thank you. Still good morning, Your Honors. Seems to be. Again, I'm still Joanna Christensen. This time I'm representing Christian Shelton, the appellant, in this matter. I assume the court is aware of the government's 28-J letter, which I believe was filed yesterday or Friday, regarding Curitin. Given the Curitin decision, in which there are three classes of these dean issues, we are now arguing that Mr. Shelton falls in the Curitin class rather than the Wheeler and Stahl Ward class, because it's unclear from the sentencing hearing if the judge was constrained by Roberson or not. I speak with some authority regarding Wheeler, Starwalt, and Curitin, because I had represented all three of them, and their cases are different. I'm sorry, Wheeler and Starwalt are different. Wheeler, it was inconceivable. The court would have given a lower sentence, since he got an above-guideline sentence. Mr. Starwalt got a mid-guideline sentence. Mr. Shelton got a below-guideline sentence. But again, there's no indication that the court was constrained or not constrained by Roberson. Dean had not been decided. The government makes arguments about 5G 1.2e. It also, there's no reflection the court was considering that guideline section when sentencing Mr. Shelton. So, you're, as in Curitin, you would like a Palladino style? A Palladino type remand. I don't know if we're going to call them that, if we're going to call them Curitin remands, but either way, I think given Curitin setting out those three categories, we don't have the government's concession, of course, so we fall in the third murky, cloudy area as Mr. Curitin did. And unless the court has questions, I think we'll rest on that argument and take the time to make the unreasonableness argument to the district court on limited remand. All right. Thank you very much. Thank you. Mr. Whalen. Good morning, Your Honors. May it please the court, Nathanael Whalen here on behalf of the United States. I guess now we're left debating whether this is a Palladino remand case or an affirmance. It's the government's position that this court should affirm. But I don't see why, under the guideline that requires allocation of sentences, that tells you anything about the length of the sentence that you're allocating. It's just the standard old guideline about, you know, if you have something for concurrent sentences and it meets the guidelines, then you just run them concurrently, unless there's a statute that says you have to have consecutive, and if you've got a blend, you can run them a little bit consecutive and a little bit concurrent, and you have to play with them a little bit that way to come up with the recommended sentence. But it doesn't tell you anything about Dean or Roberson or, you know, what the legal restrictions on sentences are. It doesn't tell you what the legal restrictions are, Judge, but it would. And that's what we're dealing with. Well. So why shouldn't we ask the district judge, who was inclined to be benevolent, whether maybe she would have been a little more so, knowing that Dean completely threw out our Well, a couple of responses to that, Judge. First, we're hearing plain error, and so if there's no indication in the record that Roberson constrained the district court's analysis. All of the Palladino cases were plain error, too. Nobody had been making those arguments in the pre-Booker era. I understand that, Your Honor, but there still has to be some consequence to plain error review, and it's our position that the defendant has to point to this court in error in that instance. But the consequence we found in Palladino was that you had a sentence that was too long. Correct. I understand. Based on the misunderstanding that the sentencing guidelines could be mandatory, I don't see what's the difference. Well, there's the basehold question of whether there's a misunderstanding as to whether Roberson applied to this case at all, and it's our position that the district court didn't give any indication that Roberson in its analysis applied. And if I can go back to the guideline, what the guideline says, this 5G 1.2, it says establish the sentence you want first, and then jigger them accordingly. And that's different to 5G 1.2a, which is what this court cites in Roberson, where it says consider the 924C independently. So what that guideline is telling you is do what Dean says, which is come up with the right sentence, and then apportion them accordingly. And that's what the district court did. We don't know that that's what the district court did. That's the cloudy part, you know, under a curator. Again, Your Honor, I would say we don't know because there's no evidence in the record that the court felt constrained by Roberson because Mr. Shelton has a... Because the legal backdrop was different. I understand. Why would the court have gone into that? I mean, you can't ask district courts to go off into long hypothetical discussions of every law or every case regime the Supreme Court might change someday. Absolutely. It is worth noting that cert had been granted and Dean had been argued at this point. And so that's a position, that's something that Mr. Shelton could have raised in front of the district court. That would have preserved it. And in that instance, this court is looking under a de novo standard, I think, because it's about sentencing procedure. That didn't happen here. We're here on plain error, and there has to be some responsibility. That has to mean something. And it's our position that that has to mean Mr. Shelton has a burden of showing an error, and just a blank record doesn't show an error in this case. Now in terms of whether the court felt constrained by the Roberson line of cases, if you look at the PSR recommendation on how to allocute these counts of conviction, PSR says statutory maximum 240 months on the drug house, and then 120 on the 924C. If the district court really were operating under the Roberson analysis, where you can't consider them together, it's unclear to me the district court would have subsequently lowered both of those sentences to reach its desired results, but that's what the court does. It goes from 240 down to 180 on the drug house, 120 down to 60 on the 924C. And that's because the court is considering this as a package. So when the court reaches the desired result, it then apportions them accordingly, as the guideline tells the court to do, this 5G 1.2E guideline. I understand the court's maybe skepticism at that. However, we do think that this case should be affirmed because the district court gave no indication it felt constrained by Roberson whatsoever. Unless this court has any questions on either that or the substantive reasonableness, we'll rest on our briefs. That sounds like a fine thing. Thank you. Thank you. Anything further, Ms. Christensen? I want to note that Curitin was also plain error, and Curitin necessarily also involved 5G 1.2E because he was convicted, I believe, of a total of six offenses. Some had mandatory minimums, some had statutory maximums, and the court also apportioned in that case. It's a very similar case. The only difference is perhaps that Mr. Shelton got a slightly below guideline sentence in the end. But other than that, I think that the consequence for plain error is the limited remand. This court does not release jurisdiction. The district court doesn't have to have statements, although it often asks for them on limited remand, and then it will simply be affirmed if the district court said, no, it didn't make a difference or it didn't constrain me. That's the consequence. So unless the court has questions, I will close for today and ask for the limited remand given by Curitin. And in the strike of noon. Yes. Right? I don't think I've ever done that before. All right. Thank you very much. Thanks to both counsel. Thank you. The court will take the case under advisement, and the court will be in recess. Thank you. Thank you.